IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02762-PAB-NRN

GENTLE GIANT MOVING CO., INC.,

Plaintiff,

v.

GENTLE GIANT MOVING AND STORAGE INC.,
JOSE M. ESQUIVEL,
ITAMAR FRIEDMAN, SR., and
EMPIER MOVING AND STORAGE SERVICES CO.,

Defendants.

---

**ORDER**

---

This matter is before the Court on plaintiff Gentle Giant Moving Co., Inc.'s Motion

for Sanctions and Application for Default Judgment Against Defendants Jose M.

Esquivel, and Itamar Friedman, Sr. [Docket No. 42].  The Court has jurisdiction

pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

## I.  BACKGROUND

On November 11, 2017, plaintiff filed this lawsuit against defendants Gentle

Giant Moving and Storage Inc., Empier Moving and Storage Services Co. (collectively,

"the corporate defendants"), Jose M. Esquivel, and Itamar Friedman, Sr. (collectively,

"individual defendants") (collectively, "defendants").  Docket No. 1.  In its complaint,

plaintiff alleges the following:

Plaintiff is a professional moving services business that has used its company

name, Gentle Giant Moving Co., Inc., since its founding in 1980. *Id.* at 5, ¶ 12. It owns multiple trademark registrations for the marks "GENTLE GIANT," "GENTLE GIANT MOVING COMPANY," and the company's logo, each registered for the uses related to moving and relocation services. *Id.*, ¶ 13. Plaintiff's trademark application for "GENTLE GIANT MOVING & STORAGE," which was filed with the U.S. Patent and Trademark Office in 2013, is pending. *Id.* at 6-7, ¶ 14.

Plaintiff alleges it became aware that a competing company was using its GENTLE GIANT and GENTLE GIANT MOVING AND STORAGE trademarks. *Id.* at 7, ¶ 16. Defendants had registered a domain name at gentlegiantservices.com, which was used in connection with defendants' packing, moving, and storage services. *Id.*, ¶ 17. Defendant Gentle Giant Moving and Storage Inc. incorporated in the state of Colorado under the name "Gentle giant moving and storage inc" and registered to do business in the state under the name "jose m esquivel." *Id.*, ¶ 18. Defendant Empier Moving and Storage Services Co. incorporated in Colorado under the name "empier moving & storage services co" and subsequently registered to do business in the state under the assumed names "empire moving and storage inc" and "gentle giant moving and storage inc." *Id.* at 8, ¶ 20.

In 2016, plaintiff's counsel sent cease and desist letters to the corporate defendants,[1] demanding they stop using the trademarks GENTLE GIANT, GENTLE GIANT MOVING AND STORAGE, and any other trademark similar to the GENTLE

_____

[1]Plaintiffs allege defendants Esquivel and Friedman are the principal officers of the Gentle Giant Moving and Storage Inc. and Empier Moving and Storage Services Co. Docket No. 1 at 7-8, ¶¶ 16, 22.

GIANT mark. *Id.*, ¶ 23. Neither corporate defendant responded. *Id.,* ¶ 24. A second set of letters similarly went unanswered. *Id.,* ¶ 25.

Plaintiff initiated a Uniform Domain-Name Dispute-Resolution Policy ("UDRP") proceeding in 2017 regarding defendants' use of the domain gentlegiantservices.com. *Id.* at 9, ¶ 28. Defendants did not respond to the complaint. *Id.,* ¶ 29. While the action was pending, defendants registered two new domains – ggmovingservices.com and ggmovingreservations.com – and established a website at ggmovingservices.com. *Id.*, ¶ 31. The domain arbitrator issued a decision ordering the domain gentlegiantservices.com to be transferred from defendants to plaintiff. *Id.*, ¶ 29. Defendants continued to use that domain until the transfer took place. *Id.,* ¶ 30.

Plaintiff alleges that it has received complaints from multiple individuals who believed they had hired plaintiff but, in reality, had hired defendants and were unsatisfied with defendants' services. *Id.* at 11, ¶ 38. Plaintiff asserts that defendants' actions have harmed its business reputation and goodwill and have led to lost sales and profits. *Id.,* ¶ 37.

After plaintiff initiated this lawsuit, defendants were properly served, Docket No. 7, and filed an answer on December 26, 2017. Docket No. 11. One month later, defendants' counsel moved for leave to withdraw from representation. Docket No. 19; Docket No. 22. The magistrate judge granted the motions. Docket No. 23; Docket No. 29.

The magistrate ordered the corporate defendants to retain new counsel by

March 30, 2018.[2]  Docket No. 29 at 2.  Despite the magistrate judge's order, no attorney

entered an appearance for the corporate defendants.  Docket No. 34 at 2.  The

magistrate judge ordered the corporate defendants to appear at a show cause hearing

on May 1, 2018 and show cause why default judgment should not be entered against

them pursuant to Fed. R. Civ. P. 16(f).  *Id.* at 3.

The corporate defendants failed to appear at the show cause hearing.  Docket

No. 35 at 1.  On May 1, 2018, the magistrate judge recommended that the Court enter

default against the corporate defendants and allow plaintiff to file a motion for default

judgment against those defendants.  Docket No. 36 at 3.  No party filed an objection to

the Recommendation.

Meanwhile, on April 4, 2018, plaintiff filed a Motion to Compel Responses to

Discovery Requests Propounded Upon Defendants [Docket No. 32], alleging

defendants had failed to respond to its discovery requests.  Docket No. 32 at 2-3.  On

May 1, 2018, the magistrate judge ordered defendants to respond to plaintiff's

discovery requests by May 15, 2018.  Docket No. 37 at 1.  The Order stated:

> **Defendants shall respond to Plaintiff's written discovery requests on or
> before May 15, 2018.  Failure to do so may result in sanctions.**
> Specifically, Fed. R. Civ. P. 37 lists a variety of sanctions available when a
> party must file a motion compelling compliance with discovery obligations,
> which includes 'rendering a default judgment' or treating the behavior as
> contempt of court.

*Id.* at 1-2 (emphasis in original).

---

[2]"As a general matter, a corporation or other business entity can only appear in
court through an attorney and not through a non-attorney corporate officer appearing
pro se."  *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001).

Defendants failed to respond to plaintiff's discovery requests or the Court's order. On October 23, 2018, plaintiff filed this Motion for Sanctions and Application for Default Judgment Against Defendants Jose M. Esquivel and Itamar Friedman, Sr. Docket No. 42.[3] Plaintiff asks the Court to enter an order granting default judgment against all defendants under Rules 16(f) and 37(b)(2). Docket No. 42 at 3, 7. It further requests the Court to award plaintiff damages in the amount of $63,903.47, to award plaintiff reasonable attorney's fees, and to enter a permanent injunction enjoining defendants from infringing on plaintiff's trademarks. *Id.* at 8.

## II. LEGAL STANDARD

"On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f). The Federal Rules of Civil Procedure further permit a court to sanction a party if the party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). Sanctions for either violation may include "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(vi).

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry, . . . and in making such a determination trial courts are accorded broad discretion." *Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996). "Default judgment is generally considered a harsh sanction that should be

---

[3]Although the motion's title references just the two individual defendants, the motion seeks sanctions against all defendants. Docket No. 42 at 1, 7.

used only when a party's noncompliance is due to willfulness, bad faith, or any fault of the disobedient party, and not when a party is unable to comply with a discovery order." *Power Places Tours, Inc. v. Free Spirit*, No. 16-cv-02725-CMA-KMT, 2017 WL 2718473, at *2 (D. Colo. June 23, 2017). A willful failure to comply is "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." *Id.* (quoting *In re Standard Metals Corp.*, 817 F.2d 625, 628-29 (10th Cir. 1987). Before imposing a default judgment as a sanction, a court should consider "(1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that [default judgment] would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992)).

## III. ANALYSIS

### A. Sanctions Under Rules 16(f) and 37(b)(2)

Plaintiff seeks an entry of default judgment against the corporate defendants under Rule 16(f) due to their failure to comply with the Court's order to retain counsel [Docket No. 29] and against the individual defendants under Rule 37(b)(2) for their failure to comply with the magistrate judge's order directing them to respond to plaintiff's discovery requests [Docket No. 37]. The Court finds each *Ehrenhaus* factor favors entry of default judgment against defendants.

The Court determines plaintiff has been prejudiced by defendants' failures to comply with the Court's orders. Defendants have failed to participate in the litigation for

over a year, which has hindered plaintiff's ability to conduct discovery or otherwise proceed with the case. Moreover, defendants' unresponsiveness has caused plaintiff to file additional motions, and thereby incur additional fees, in an attempt to obtain discovery. This supports a finding of prejudice to plaintiff. *Armstrong v. Swanson*, No. 08-cv-00194-MSK-MEH, 2009 WL1938793, at *4 (D. Colo. July 2, 2009).

The Court also concludes that defendants' conduct has interfered with the judicial process. After the corporate defendants failed to obey the Court's order to retain counsel, the magistrate judge held a hearing on its order to show cause, which defendants failed to attend. The additional time spent by the magistrate judge on this case resulting from the defendants' failure to comply with court orders "reflects time that could otherwise have been used to advance other cases." *Id.* Further, leaving this unresolved case – which shows no signs of progressing in the near future – on the docket will continue to interfere with the Court's management of its docket.

The Court finds that defendants are culpable for their conduct. Defendants were served and filed an answer, evidencing their awareness of the existence of this case. Docket No. 7; Docket No. 11. After their attorneys withdrew, defendants failed to defend the action, despite numerous warnings from the Court that default judgment was a potential result of their continued inaction – both for the corporate defendants' failure to retain counsel and for the individual defendants' failure to respond to plaintiff's discovery request. Docket No. 29 at 2; Docket No. 37 at 2. The defendants cannot claim surprise at a default judgment entered as a sanction. Finally, due to defendants' failure to participate in this case, any lesser sanction would have little to no effect on

defendants. Therefore, entry of a default judgment in favor of plaintiff and against defendants is warranted.[4]

### B. Damages

Plaintiff contends that the Court, should it determine default judgment is warranted, "must follow the procedures delineated in Fed. R. Civ. P. 55." Docket No. 42 at 4. Plaintiff argues that, for the purposes of determining damages, defendants are deemed to have admitted the well-pleaded facts set out in the complaint, citing *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). *Olcott* stands for the proposition that a defendant *in default* admits the plaintiff's well-pleaded allegations of fact. *Id.* Here, default has not been entered, and the Court's basis for entering default judgment is not defendants' failure to answer or otherwise defend under Rule 55. In fact, defendants did file an answer and denied plaintiff's allegations of trademark infringement. *See, e.g.,* Docket No. 11 at 4, ¶¶ 37, 41; at 5, ¶¶ 48-49, 57, 63; at 6, ¶ 72. The basis for the Court's entry of default judgment is to sanction defendants for failure to comply with court orders. Accordingly, the Court does not take plaintiff's well-pleaded complaint as true for the purpose of determining damages. *See Supragenix LLC v. Garrity*, 2016 WL 1171525, at *1 (D. Utah Mar. 24, 2016) (declining to accept plaintiff's well-pleaded facts as true when default judgment was warranted for discovery abuses, as opposed to failure to answer the complaint).

---

[4]Because this default judgment is entered pursuant to Rules 16(f) and 37(b)(2) rather than Rule 55, "it is not necessary to direct an entry of default prior to the default judgment." *Colo. Satellite Broadcasting, Inc. v. Ciphermax, Inc.*, No. 07-cv-01285-REB-MJW, 2008 WL 4080041, at *2 (D. Colo. Sept. 2, 2008).

### 1. Injunctive Relief

Plaintiff asks the Court to enter a permanent injunction preventing defendants from engaging in "any further infringement of [plaintiff's] trademarks."  Docket No. 42 at 7.  The Court has "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant" of a trademark.  15 U.S.C. § 1116(a).  *See also Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 943 (E.D. Va. 2011) (court finding an injunction to be "the best means to prevent the defendants from future infringement" because defendants' failure to comply with discovery orders demonstrated they were unlikely to cooperate in future suit for damages).

The Lanham Act prohibits the unauthorized use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(a).  To prove trademark infringement, "the moving party must show: (1) the mark is validly registered; (2) defendants' use of the mark was unauthorized; and (3) defendants' use is likely to cause confusion in the market place concerning the source or quality of" the service.  *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1222 (D. Colo. 2001).

Plaintiff has established that it owns the registered mark and that defendants' unauthorized use of its mark was in the course of advertising its moving services. Docket No. 42-1 at 16-22.  It must also demonstrate that defendants' use of the

GENTLE GIANT marks is likely to cause confusion. "[T]he central inquiry in a trademark infringement case is the likelihood of customer confusion." *Beltronics USA, Inc. v. Midwest Inventory Distribution*, LLC, 562 F. 3d 1067, 1071 (10th Cir. 2009). "The party alleging infringement has the burden of providing likelihood of confusion." *Id.*

The court considers the following factors when determining whether a likelihood of confusion exists: (1) "evidence of actual confusion"; (2) "the strength of the contesting mark"; (3) "the degree of similarity between the competing marks"; (4) "the intent of the alleged infringer in adopting the contested mark"; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products"; and (6) "the similarity of the parties' products and the manner in which they market them." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). No one factor is dispositive, and "the final determination of likelihood of confusion must be based on consideration of *all* relevant factors." *John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1138 (10th Cir. 2008).

### a. Likelihood of confusion

"Although evidence of actual confusion is not necessary to Lanham Act liability, actual confusion is persuasive reinforcement of an assertion that confusion is likely." *Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 948 (D. Colo. 1988). However, "[d]e minimis evidence of actual confusion does not establish the existence of . . . [a] likelihood of confusion." *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1092 (10th Cir. 1999) (citing *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*,

22 F.3d 1527, 1535 (10th Cir. 1994) (determining that plaintiff's evidence of seven examples of actual confusion did not create a genuine issue of material fact as to likelihood of confusion); *but see Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546 (11th Cir. 1985) (finding evidence of ten to fifteen instances of confusion in a one-week span to be "persuasive evidence of actual confusion").

"Probable confusion cannot be shown by pointing out that at someplace, at some time, someone made a false identification." *King of the Mountain Sports*, 185 F.3d at 1092 (citing 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:14 (4th ed. 1996)). Evidence of actual confusion, however, "must be put in proper context." *Overstock.com, Inc. v. Nomorerack.com, Inc.*, 2014 WL 2946646, at *5 (D. Utah June 30, 2014). "Evidence of the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given the evidence." *HealthONE of Denver, Inc., v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1185 (D. Colo. 2012) (quoting 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23.14 (4th ed. 2011)). Plaintiff has presented evidence that, over a four-month span, at least ten of defendants' customers made complaints about defendants' business on plaintiff's website, by calling plaintiff's telephone number, and through other webpages associated with plaintiff's business. Docket No. 42-1 at 29.

Although this number of confused consumers is small, the context from which this evidence arose should be considered. These confused customers consist of the group of people who had hired defendants between late 2017 and early 2018, narrowed

to customers who had received poor service, and then further narrowed to only customers who had elected to complain about that poor service. As the Third Circuit has recognized, because "many instances [of confusion] are unreported," it may be "difficult to find evidence of actual confusion." *Checkpoint Sys., Inc. v. Check Point Software Tech.*, *Inc.*, 269 F.3d 270, 291 (3d Cir. 2001). "The ultimate question is whether" the use of the mark is "likely to cause consumers to believe there is an affiliation" between the parties. *First Sav. Bank F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 652 (10th Cir. 1996). Here, the fact that customers who had hired defendants were confused as to which company they hired weighs slightly in favor of finding a likelihood of confusion.

### b. Degree of similarity between the marks

In evaluating similarity of marks, courts "test the degree of similarity between marks on three levels: sight, sound, and meaning" and will "consider the marks as a whole as they are encountered by consumers in the marketplace." *Water Pik*, 726 F.3d at 1155 (internal quotation omitted). "The similarities of the marks are given more weight than the differences." *HealthONE*, 872 F. Supp. 2d at 1174. Here, the marks are either almost identical or actually identical. Defendants' company name, "Gentle Giant Moving and Storage Inc.," subsumes plaintiff's existing text mark, "GENTLE GIANT." Further, defendants' company name is identical to plaintiff's pending trademark, "GENTLE GIANT MOVING AND STORAGE," but for defendants' addition of the word "Inc." Docket No. 1 at 12, ¶ 45. "Courts have repeatedly held that the confusion created by use of the same word as a primary element in a trademark is not

counteracted by the addition of another term."  *Marker Int'l v. deBruler*, 635 F. Supp. 986, 999 (D. Utah 1986), aff'd, 844 F.2d 763 (10th Cir. 1988).  *See also Coherent, Inc. v. Coherent Tech., Inc.*, 736 F. Supp. 1055, 1064 (D. Colo. 1990) (defendant's addition of one word to plaintiff's mark found to be visually similar).  The Court finds the high degree of similarity between the marks weighs in favor of finding a likelihood of confusion.

### c.   Degree of similarity between the parties' businesses

Moreover, the similarity of the parties' businesses also favors finding a likelihood of confusion.  "The greater the similarity between the products and services, the greater the likelihood of confusion."  *Universal Money Ctrs.,* 22 F.3d at 1532.  The parties offer identical services, as both are in the business of providing moving, relocation, and storage services.  Docket No. 1 at 4, ¶ 9 and at 7, ¶ 17.  Moreover, both companies conduct or conducted business in the state of Colorado.  Docket No. 1 at 7-8, ¶¶ 18-21 and 11, ¶ 39; Docket No. 42-1 at 16.  That the parties provide the same services in the same place supports a finding of a likelihood of confusion between the marks.

### d.   Other factors

Although the above factors favor a finding of likelihood of confusion, there is no evidence in the record as to the strength of plaintiff's mark, nor does plaintiff present any evidence as to defendants' intent in choosing its mark or as to consumers' degree of care in selecting the parties' services.  Because plaintiff bears the burden of showing likelihood of confusion, *Beltronics USA*, 562 F. 3d at 1071, the Court finds these three factors weigh against a finding of likelihood of confusion.

### e. Injunctive relief is appropriate

"[T]he determination of a likelihood of confusion requires more than counting the number of factors in favor of each side." *Water Pik, Inc. v. Med-Systems, Inc.*, 848 F. Supp. 2d 1262, 1279 (D. Colo. 2012), *aff'd*, 726 F.3d 1136, 1143 (10th Cir. 2013). "It requires the Court to take into account the proper weight that each factor should be assigned." *Id.* The similarity between the marks and any evidence of actual confusion are "given great weight." *Id.*; *see also King of the Mountain Sports*, 185 F.3d at 1091 (noting that similarity of the marks is the most important factor); *Hi-Tech Pharm., Inc. v. Herbal Health Prod., Inc.*, 132 F. App'x. 348, 350 (11th Cir. 2005) (per curiam) (unpublished) (type of mark and actual confusion are "most weighty" considerations) (citation omitted).

Although plaintiff has not presented evidence of three of the six factors used to determine likelihood of confusion, the Court gives greater weight to those factors for which there is evidence and finds that plaintiff has met its burden of establishing a likelihood of confusion between the marks. The marks at issue are essentially identical, which provides strong evidence of a likelihood of customer confusion. Further, the parties provide identical services, which also heavily weighs towards a likelihood of confusion. Finally, plaintiff presented evidence of that confusion in the form of customers, although not many, who were confused as to which of the two companies they had hired. The Court finds a likelihood of confusion between the marks and finds injunctive relief appropriate.

When entering an injunction, the Court is required to "describe in reasonable

14

detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). Plaintiff has not set out with specificity the scope of the injunctive relief it is requesting. It seeks an injunction permanently enjoining defendants from infringing upon the GENTLE GIANT marks by "directly or indirectly engaging in any activity constituting an infringement of the GENTLE GIANT Marks, or of Gentle Giant Moving Co., Inc.'s rights in, or right to use or exploit, the GENTLE GIANT Marks," or by "directly or indirectly using any false designation of origin or false or misleading representation that can or is likely to lead the trade or public or individuals erroneously to believe that any service, and/or other item has been manufactured, assembled, produced, distributed, displayed, sponsored, approved or authorized by . . . Gentle Giant Moving Co., Inc., when such is not true in fact," or "assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities listed above." Docket No. 42 at 8, ¶ 3.

"To satisfy Rule 65(d), the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." *IDG USA, LLC v. Schupp*, 416 F. App'x. 86, 88 (2d Cir. 2011) (unpublished). Plaintiff's request that defendants be enjoined from "directly or indirectly engaging in any activity constituting an infringement" of its marks does not give defendants reasonable notice as to which specific acts would prohibited. Because plaintiff does not request sufficiently specific injunctive relief, this request is presently too general for the Court to enter a permanent injunction under Rule 65(d)(1).

## 2. *Disgorgement of Profits*

Plaintiff also seeks disgorgement of defendants' profits, generated as a result of their trademark infringement, in the amount of $63,903.47. Docket No. 42 at 8. When a trademark violation has been established, plaintiffs are entitled to recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Disgorgement of profits "is truly an extraordinary remedy and should be tightly cabined by principles of equity." *Western Diversified Serv., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1274 (10th Cir. 2005). To recover disgorgement of profits under the Lanham Act, "plaintiffs must show either actual damages or willful action on the part of the defendant." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013). Further, "because disgorgement of profits is an equitable remedy, the district court must weigh principles of equity before awarding disgorged profits." *Id.* (internal quotation omitted).

Plaintiff does not seek recovery of actual damages. Accordingly, to recover disgorgement of defendants' profits, plaintiff must show willful action on the part of defendants. "[T]he willfulness required to support an award of profits in the absence of actual damages is the intent to benefit from the goodwill or reputation of another." *Western Diversified Serv.*, 427 F.3d at 1274. "[D]eliberate adoption of a similar mark may lead to an inference of an intent to pass off goods as those of another." *Id.* at 1275. But intent "requires something more than 'indifference' or a mere 'connection.' It is a conscious desire." *Id.* at 1274.

Plaintiff alleges that its counsel sent Gentle Giant Moving & Storage Inc. and

16

Esquivel a cease and desist letter demanding that they cease use of the GENTLE
GIANT trademarks, but that defendants were unresponsive. Docket No. 1 at 8, ¶¶ 23-
24. Plaintiff further alleges that it then instituted a UDRP proceeding and, thereafter,
defendants registered two new domains and a website at ggmovingservices.com. *Id.* at
9-10, ¶ 31. Despite the new website's more general domain, the new website located
at ggmovingservices.com was substantially identical to defendants' old
gentlegiantservices.com website, shifting only from operating under the name "Gentle
Giant Services" to "Gentle Giant Moving and Storage." *See* Docket No. 42-1 at 16-22.
Otherwise, it appears that defendants, in response to the UDRP proceeding, continued
to operate the same website and offer the same services merely under a different
domain name.

The Court is satisfied that defendants' actions demonstrate a willful intent to
benefit from the goodwill or reputation of plaintiff's business. That defendants – after
learning of plaintiff's infringement allegations – moved their website to a more generic
domain name, but continued to use the Gentle Giant name, coupled with their
unresponsiveness to the cease and desist letters and the UDRP proceeding, suggests
an intent to conceal their actions or to otherwise deceive. Further, as stated above, the
marks in question are essentially identical, and the fact that defendant used these
identical marks in connection with the same type of services that plaintiff offers and was
targeting the same market as plaintiff targets also supports an inference of willful action.
*See Western Diversified*, 427 F.3d at 1277 (finding inference of intent to benefit from
plaintiff's goodwill where defendant appropriated two of plaintiff's identical marks that

referred to substantially similar products aimed at the same group of consumers); *see also Klein-Becker*, 711 F.3d at 1162 (finding that disgorgement of profits was warranted based on inference of willfulness arising from defendant's appropriation of plaintiff's identical registered mark). Plaintiff has demonstrated that defendants acted willfully in their infringement.

The Court also finds that equitable considerations support an award of disgorgement of profits. In determining whether disgorgement of profits is warranted, the Tenth Circuit has considered whether the plaintiff lost sales due to the trademark infringement, whether the defendant benefitted from any goodwill associated with the trademark, and whether there was consumer confusion or deception caused by the infringement. *Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1055 (10th Cir. 2001). As set out above, plaintiff has produced evidence demonstrating customer confusion resulting from defendants' infringement. Further, such customer confusion evidences potential lost sales of plaintiffs. *Cf. Klein-Becker USA, LLC v. Englert*, 2011 WL 147893, at *11 (D. Utah Jan. 18, 2011) *aff'd*, 711 F.3d 1153 (10th Cir. 2013) ("While it is not certain that [plaintiff] would have sold products to every one of the [defendant's] customers through [plaintiff's] authorized resellers, the infringement likely diverted some customers away from authorized resellers, causing [plaintiff] to lose sales."). And while it is unclear from the record whether defendants benefitted from plaintiff's goodwill, defendants at least intended to receive such benefit from their infringement. The Court also considers defendants' repeated failure to respond to plaintiff's cease and desist letters, the UDRP proceeding, and this lawsuit, which

demonstrates that plaintiff's ability to otherwise recover from defendants as a result of their infringement may be limited. In sum, the Court finds that equitable considerations support disgorgement of defendants' profits here.

In determining the appropriate amount of the award, the plaintiff "shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). "Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity." *Klein-Becker*, 2011 WL 147893, at *11 (quotation marks omitted). "While the amount of defendant's sales must be established with 'reasonable certainty,' 'courts may engage in some degree of speculation in computing the amount of damages, particularly when the inability to computer them is attributable to the defendant's wrongdoing.'" *Id.* (quoting *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1241 (10th Cir. 2006)).

Plaintiff seeks $63,903.47 of defendants' profits. Docket No. 42 at 5. This total was computed based on "56 pages of documents Defendants sent to [plaintiff] along with Defendants' initial disclosures," Docket No. 42-1 at 2-3, ¶ 10, and is based on payments made for defendants' services from 21 customers. *Id.* at 23. Plaintiff's counsel submitted an affidavit stating that, "[b]ecause Defendants have not otherwise cooperated with discovery, [plaintiff does] not know whether these disclosures are complete." *Id.* at 2-3, ¶ 10. Plaintiff has also submitted two relocation estimates it received from defendants as proof of two of the 21 customer payments it seeks in its request, *id.* at 24, 27, and plaintiff's counsel has declared under penalty of perjury that "the documents disclosed by Defendants . . . reflect payments from customers to

Defendants operating under the trademark GENTLE GIANT, in the amount of $63,903.47." *Id.* at 3, ¶ 11.

The Court finds that plaintiff has met its burden of showing defendants' sales with reasonable certainty. Plaintiff has attested to the fact that it has received evidence of customer payments received by defendants operating under the infringed trademark and has provided documentation of two of those payments. *Id.* at 24, 27. Defendants, having failed to respond to plaintiff's motion or participate meaningfully in discovery, have not proved any costs or deductions to be taken from plaintiff's proposed total. As a result, plaintiff is entitled to disgorgement of defendants' profits in the amount of $63,903.47.

### 3. Attorney's Fees

Finally, plaintiff also requests the Court enter an award of attorney's fees in favor of plaintiff on the grounds that this is an exceptional case under 15 U.S.C. § 1117(a). Section 1117(a) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." An "exceptional case" occurs "when a trademark infringement is malicious, fraudulent, deliberate, or willful." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F. 3d 1219, 1232 (10th Cir. 2000). Because plaintiff has established that defendants' infringement was willful, plaintiff is entitled to recover its reasonable attorney's fees accrued in this action.

## IV. CONCLUSION

At present, although the Court finds plaintiff is entitled to entry of a default judgment under Rules 16(f) and 37(b)(2) and to injunctive relief, the Court is unable to

determine the appropriate scope of that injunctive relief. It is therefore

**ORDERED** that plaintiff's Motion for Sanctions and Application for Default Judgment Against Defendants Jose M. Esquivel, and Itamar Friedman, Sr. [Docket No. 42] is **GRANTED IN PART,** and **DENIED WITHOUT PREJUDICE IN PART** as follows:

It is (1) **GRANTED** to the extent it seeks entry of a default judgment pursuant to Federal Rules of Civil Procedure 16(f) and 37(b)(2); (2) **GRANTED** to the extent it seeks an award of disgorgement of defendants' profits and attorney's fees under 15 U.S.C. § 1117(a); and (3) **DENIED WITHOUT PREJUDICE** to the extent it seeks entry of a permanent injunction against defendants. It is further

**ORDERED** that any additional motion for default judgment on the issue of injunctive relief shall be filed **on or before September 20, 2019**. If no additional motion is filed, default judgment as to liability shall enter in favor of plaintiff Gentle Giant Moving Co., Inc. and against defendants Gentle Giant Moving and Storage, Inc., Jose M. Esquivel, Itamar Friedman, Sr., and Empier Moving and Storage Services Co. It is further

**ORDERED** that defendants shall be liable for disgorgement of $63,903.47, representing profits gained as a result of the conduct alleged in the Complaint [Docket No. 1]. It is further

**ORDERED** that the Order and Recommendation of the magistrate judge [Docket No. 36] is not accepted as **MOOT**.

DATED September 4, 2019.

BY THE COURT:

  s/Philip A. Brimmer
_____
PHILIP A. BRIMMER
Chief United States District Judge